UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TERRY KLEIN, derivatively on behalf of QLIK
TECHNOLOGIES, INC.,

                    Plaintiff,

        – against –

CADIAN CAPITAL MANAGEMENT, LP;
CADIAN FUND, LP; CADIAN MASTER
FUND, LP; CADIAN GP, LLC; CADIAN
CAPITAL MANAGEMENT GP, LLC; ERIC
BANNASCH; and QLIK TECHNOLOGIES,
INC.,

                    Defendants.

---

**OPINION AND ORDER**

15 Civ. 8140 (ER)

Ramos, D.J.:

      Terry Klein ("Klein" or "Plaintiff") brings this action pursuant to Section 16(b) of the

Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) ("Section 16(b)"), on behalf of nominal

defendant Qlik Technologies, Inc. ("Qlik"), seeking disgorgement of so-called "short-swing"

profits by defendants Cadian Capital Management, LP ("CCM"), and its client funds, related

entities, and founder (together, "Cadian").[1]  Pending before the Court is Cadian's motion

pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss the Complaint for lack of subject

matter jurisdiction, Doc. 31, and Plaintiff's cross-motion to allow Qlik to be substituted as a

plaintiff under Federal Rules of Civil Procedure 17(a)(3) and 25(c), Doc. 37.[2]

---

[1] Specifically, the Cadian defendants are comprised of:  CCM; CCM's founder and portfolio manager, Eric
Bannasch; CCM's general partner, Cadian Capital Management GP, LLC; certain of CCM's related funds—Cadian
Fund LP and Cadian Master Fund LP, and the Cadian Funds' general partner, Cadian GP, LLC.  *See* Complaint
("Compl.") (Doc. 1) ¶¶ 3–8.

[2] Qlik, the nominal defendant, joins Klein's cross-motion for its substitution and opposition to Cadian's motion to
dismiss.  Doc. 38.

For the reasons discussed below, Cadian's motion to dismiss is GRANTED, and Plaintiff's motion to substitute Qlik is DENIED.

## I.  BACKGROUND[3]

Klein alleges that during the period between May 8, 2014 and December 31, 2014, Cadian engaged in purchase and sale transactions in Qlik stock that resulted in disgorgeable short-swing profits.  Compl. ¶ 30.[4]  On June 11, 2015, Klein demanded that Qlik sue Cadian based on their alleged short-swing trading.  *Id.* ¶ 36.  On July 24, 2015, Qlik declined Klein's demand to sue.  *Id.*  Plaintiff commenced the instant suit on October 15, 2015.  At the time of filing, Klein was an owner of Qlik common stock.  *Id.* ¶ 1.  Plaintiff does not allege that she owned any common stock during the period of the alleged short-swing trading, from May 8, 2014 to December 31, 2014.[5]

After the Complaint was filed, Qlik went through a corporate reorganization which cancelled all of the public shareholders' stock and paid each shareholder cash in return.  Specifically, on June 2, 2016, Qlik announced that it was in the process of being acquired by an affiliate of the private equity investment firm Thoma Bravo, LLC ("Thoma Bravo").  *See* Declaration of Robert H. Pees in Support of Motion to Dismiss ("Pees Decl.") (Doc. 33) Ex. B ("June 2016 Form 8-K").  On August 22, 2016, the merger transaction closed.  Pees Decl. Ex. C

---

[3] The following facts, accepted as true for purposes of the instant motion, are based on the allegations in the Complaint, Plaintiff's opposition to Defendants' motion to dismiss, exhibits attached to the Complaint and opposition, and declarations submitted by the parties.  *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)) (evaluating a Rule 12(b)(1) motion).

[4] For purposes of this motion, at least, Cadian does not dispute that it is a "statutory insider" as that term is defined in Section 16(b) because it was a greater than 10% beneficial owner of Qlik's common stock.  *See* 15 U.S.C. § 78p(a)(1) (defining a statutory insider as one "who is directly or indirectly the beneficial owner of more than 10 percent of any class of any equity security (other than an exempted security) which is registered pursuant to [15 U.S.C. § 78], or who is a director or an officer of the issuer of such security.").

[5] The Complaint does not indicate the date of her purchase of the stock, but rather that at the time of filing the instant action, she was a stockholder.  *See* Compl. ¶ 1.

("August 2016 Form 8-K").  Under the terms of the merger agreement, each share of Qlik common stock was cancelled and converted to the right to receive $30.50 in cash.  *Id.* at 3.  Qlik is now a wholly owned subsidiary of Qlik Parent, Inc., which is, in turn, controlled by investment funds affiliated with Thoma Bravo.  *Id.*

In November 2016[6]—nearly three months after the cash-out merger divested Klein of her shares and thirteen months after she filed the lawsuit—nominal defendant Qlik retained Klein's counsel to litigate the § 16(b) claims on its behalf, and now requests that the Court substitute Qlik as Plaintiff.  Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss and in Support of Plaintiff's Cross-Motion for Substitution ("Pl.'s Mem.") (Doc. 39) at 2.

Cadian now moves to dismiss the action under Rule 12(b)(1) for lack of subject matter jurisdiction, arguing that Klein lacked standing at the inception of the lawsuit, and even if she had standing at the inception, she lacks standing now.  Memorandum of Law in Support of the Cadian Defendants' Motion Under F.R.C.P. (12)(b)(1) to Dismiss the Complaint for Lack of Standing ("Defs.' Mem.") (Doc. 32) at 1.  Klein concedes that she lost her personal stake in the outcome of this litigation and cross-moves to substitute nominal Defendant Qlik as plaintiff. Doc. 37.

## II.    APPLICABLE LAW

### A.    Motion to Dismiss Under Rule 12(b)(1)

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  *See* Fed. R.

---

[6] On November 20, 2015, upon agreement of counsel, this case was stayed pending the Court's decision on Defendants' motion to dismiss the complaint in *Klein v. Cadian Capital Management, L.P. (Infloblox)*, 15 Civ. 4478 (ER).  Doc. 17.  The Court denied that motion on September 30, 2016, thereby lifting the stay.

Civ. P. 12(b)(1).  A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may refer to evidence outside the complaint. *Makarova*, 201 F.3d at 113 (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *see also Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) ("[T]he court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing.").

### B.      Motion to Substitute or Intervene

Plaintiff seeks to substitute Qlik under two separate Federal Rules of Civil Procedure: Fed. R. Civ. P. 17(a)(3) – Joinder of the Real Party in Interest; and Fed. R. Civ. P. 25(c) – Transfer of Interest.[7]

Rule 17(a)(1) requires that an action "be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  However, Rule 17(a)(3) prohibits a court from dismissing an action for failure to comply with subsection (a)(1) "until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3); *see also Cortlandt St. Recovery Corp. v. Hellas Telecommunications*,

---

[7] Plaintiff also argues that under Fed. R. Civ. P. 15(c)(1) the claims of the proposed new plaintiff should be deemed to "relate back" to the date of filing of the initial Complaint.  Rule 15(c) governs when an amended pleading "relates back" to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations.  *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).

790 F.3d 411, 420 (2d Cir. 2015). "The real party in interest principle embodied in Rule 17 ensures that only a person who possesses the right to enforce a claim and who has a significant interest in the litigation can bring the claim." *Cortlandt St. Recovery Corp.,* 790 F.3d at 420 (internal quotation marks and citations omitted). If a party successfully moves for ratification, joinder, or substitution, "the action proceeds as if it had been originally commenced by the real party in interest." Fed. R. Civ. P. 17(a)(3). Crucially for statute of limitations purposes, the claim of the real party in interest dates back to the filing of the complaint. *Cortlandt St. Recovery Corp.,* 790 F.3d at 421.

Rule 17 was initially adopted to ensure that assignees could bring suit in their own names, contrary to the common-law practice. *See* Fed. R. Civ. P. 17 advisory committee's notes, 1966 Amendment. However, "the modern function of the rule . . . is [ ] to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." *Cortlandt St. Recovery Corp*., 790 F.3d at 421 (alterations in original). The dismissal provision in Rule 17(a)(3) was added later "to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought." *Id.* (citing 6A Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1555 (3d ed. 2014)). "That provision codifies the modern judicial tendency to be lenient when an honest mistake has been made in selecting the proper plaintiff." *Id.*

Rule 25(c) addresses the addition of a party pursuant to a transfer of interest that occurs after the filing of the complaint. *See* Fed. R. Civ. P. 25(c). Rule 25(c) provides, in relevant part: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the

original party." Fed. R. Civ. P. 25(c).  In other words, the rule serves as a procedural mechanism to bring a successor in interest into court when "it has come to own the property in issue." *Negrón–Almeda v. Santiago*, 579 F.3d 45, 53 (1st Cir. 2009).  "The 'primary consideration in deciding a motion pursuant to Rule 25(c) is whether substitution will expedite and simplify the action.'"  *Taberna Capital Mgmt., LLC v. Jaggi*, No. 08 Civ. 11355 (DLC), 2010 WL 1424002, at *2 (S.D.N.Y. Apr. 9, 2010) (quoting *Banyai v. Mazur*, No. 00 Civ. 9806 (SHS), 2009 WL 3754198, at *3 (S.D.N.Y. 2009) (collecting cases)).  "'Substitution of a successor in interest . . . under Rule 25(c) is generally within the sound discretion of the trial court.'"  *Id.*; *see also State Bank of India v. Chalasani*, 92 F.3d 1300, 1312 (2d Cir. 1996) ("[G]ranting substitution of one party in litigation for another under Rule 25(c) is a discretionary matter for the trial court.").

## C.  Section 16(b) Generally

Section 16(b) requires, among other things, that a statutory insider surrender to the issuer (that is, the corporation which issued the applicable equity security, also known as the "issuing corporation") "any profit realized by him [or her] from any purchase and sale, or any sale and purchase, of any equity security of such issuer . . . within any period of less than six months . . ., irrespective of any intention on the part of such [statutory insider] in entering into such transaction. . . ."  15 U.S.C. § 78p(b).  The statute "imposes a form of strict liability" on statutory insiders rendering them liable "even if they did not trade on inside information or intend to profit on the basis of such information."  *Gollust v. Mendell*, 501 U.S. 115, 122 (1991); *see Gwozdzinsky v. Zell/Chilmark Fund*, 156 F.3d 305, 310 (2d Cir. 1998) ("The statute, as written, establishes strict liability for all transactions that meet its mechanical requirements.").  In enacting the statute, "'Congress recognized that insiders may have access to information about their corporations not available to the rest of the investing public.  By trading on this

information, these persons could reap profits at the expense of less well informed investors.'" *Gollust*, 501 U.S. at 121 (quoting *Foremost–McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 243 (1976)).

In contrast to "most of the federal securities laws, Section 16(b) does not confer enforcement authority on the Securities and Exchange Commission." *Gollust*, 501 U.S. at 122. Rather, the statute authorizes two categories of private persons to sue for relief: (1) "the issuer" of the security traded in violation of Section 16(b); or (2) "the owner of any security of the issuer in the name and in behalf of the issuer," but only "if the issuer shall fail or refuse to bring such suit within sixty days after the request or shall fail diligently to prosecute the same thereafter." 15 U.S.C. § 78p(b). Thus, the statute recruits the issuer and its security holders as "policemen" by providing them "a private-profit motive" to enforce the law's prohibition on short-swing trading by insiders. *Gollust*, 501 U.S. at 124–25 (quoting Hearings on H.R. 7852 and H.R. 8720 before House Committee on Interstate & Foreign Commerce, 73d Cong., 2d Sess. 136 (1934)).

## III.    DISCUSSION

Cadian asserts that Klein lacked standing at the inception of the lawsuit, and even if she had standing at the inception, she lacks standing now. Defs.' Mem. at 1. Specifically, Cadian claims that the Court was stripped of its jurisdiction on the day of the merger in August 2016 when Klein's shares were cashed out, and therefore it is now jurisdictionally prohibited from substituting Qlik in place of Klein. Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Substitution and in Further Support of the Cadian Defendants' Motion Under F.R.C.P. 12(b)(1) to Dismiss the Complaint for Lack of Standing ("Defs.' Reply") (Doc. 40) at 3–4.

Before the Court may consider Klein's request to substitute Qlik as plaintiff, it must first determine that it has jurisdiction over the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter is . . . 'inflexible and without exception.'"); *see also Harrison v. Potter,* 323 F. Supp. 2d 593, 598 (S.D.N.Y. 2004) ("A court should consider a motion under Federal Rule of Civil Procedure 12(b)(1) prior to the merits of a claim because the substantive merits thereafter "become moot and do not need to be determined.") (citing *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).

A.     **Standing and Mootness**

The Constitution limits the jurisdiction of Article III courts to matters that present actual cases or controversies. *See* U.S. Const. Art. III, § 2, cl. 1. "This limitation means that when a plaintiff brings suit in federal court, she must have standing to pursue the asserted claims. It also generally means that if the plaintiff loses standing at any time during the pendency of the proceedings in the district court or in the appellate courts, the matter becomes moot, and the court loses jurisdiction." *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 69 (2d Cir. 2001). As the Second Circuit has stated, "While the standing doctrine evaluates [a litigant's] personal stake as of the outset of the litigation, the mootness doctrine ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit . . . Thus, even as to claims that plaintiffs originally had standing to assert, the court must determine whether those claims remain live controversies or have become moot." *Id.* (citing *Cook v. Colgate*, 992 F.2d 17, 19 (2d Cir. 1993)) (internal citation omitted).

 "A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Freedom Party of New York v. New York State*

*Board of Elections*, 77 F.3d 660, 662 (2d Cir. 1996) (quoting *New York City Employees'*
*Retirement System v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir. 1992) (internal quotation
marks omitted)).  If a claim has become moot prior to the entry of final judgment, the district
court generally should dismiss the claim for lack of jurisdiction.  *See, e.g., Campbell v.*
*Greisberger*, 80 F.3d 703, 705 (2d Cir. 1996) (affirming mootness dismissal).

          a)       <u>Jurisdiction at the Inception of the Lawsuit</u>

       It is undisputed that the Complaint adequately alleges a Section 16(b) claim against
Cadian and that Klein, as a shareholder, is a person statutorily authorized to file such a claim.
*See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 105, 106 (2d Cir.
2008) (distinguishing statutory securities fraud standing from constitutional standing).  It is
similarly undisputed for purposes of this motion that Klein owned stock in Qlik at the time she
filed the instant suit.  Cadian nevertheless contends that the district court lacks jurisdiction
because Klein does not allege that she owned Qlik stock at the time of the insider trading and
therefore has no standing to sue.  Defs.' Mem. at 1, 7 n.3.  This argument is without merit.

       The conclusion that Klein had standing to pursue the claim even though she did not hold
stock at the time of the short-swing trading is consistent with the Supreme Court's determination
in *Gollust*.  *See Gollust*, 501 U.S. at 123–26 (analyzing statutory and constitutional standing in a
Section 16(b) action and finding that because plaintiff was a shareholder at the time he instituted
the action, standing requirements were met, and noting that "the terms of the statute do not even
require that the security owner have had an interest in the issuer at the time of the defendant's
short-swing trading.").

       Additionally, the Second Circuit's decision in *Donoghue v. Bulldog Inv'rs Gen. P'ship*,
696 F.3d 170 (2d Cir. 2012), distinguished between statutory and constitutional standing and

recognized that a statutory violation can cause an injury in fact sufficient to establish standing. In *Bulldog Investors*, the defendant argued that the plaintiff lacked standing because she "failed to demonstrate that the proscribed short-swing trading caused [the issuer] actual injury as necessary to satisfy the case-or-controversy requirement of Article III of the Constitution." *Id.* at 172. There, the Second Circuit found that the plaintiff—who brought suit on behalf of an issuer—had constitutional standing to bring an action under Section 16(b) based in part on its conclusion that § 16(b) "created legal rights" that, in turn, "clarified the injury that would support standing." *Id.* at 180. Specifically, the Court held that Section 16(b) confers on issuers a legal right to the short-swing profits of insiders sufficient to establish constitutional standing. *Id.* at 175. The Second Circuit explained that under Section 16(b), a shareholder plaintiff pursues a claim on behalf of an issuer, and thus the claim "is derivative in the sense that the corporation is the instrument . . . for the effectuation of the statutory policy." *Id.* (internal quotation marks and citations omitted).

Consistent with the Supreme Court's decision in *Gollust* and the Second Circuit's decision in *Bulldog Investors*, the Court finds that Klein suffered an injury in fact that is traceable to Cadian's alleged short-swing trading. Here, as in *Bulldog Investors*, Klein filed this lawsuit on behalf of Qlik to recover short-swing profits under Section 16(b). Unlike in other derivative cases, a Section 16(b) plaintiff is not required to plead that she was an owner of securities at the time of the alleged short-swing trading. Thus, although *Bulldog Investors* did not specifically address the question of whether the plaintiff in that case owned stock of the issuer at the time of the short swing transaction, "its holding as to the derivative nature of the claim compels the conclusion that security ownership at the time of the underlying short swing trading is not determinative of a shareholder plaintiff's ability to assert a constitutionally

sufficient injury in a Section 16(b) lawsuit brought on behalf of the corporation." *Roth v. Scopia Capital Mgmt. LP*, No. 16 Civ. 6182 (LTS), 2017 WL 3242326, at *4 (S.D.N.Y. July 28, 2017) (relying on *Bulldog Investors* in holding that a Section 16(b) derivative plaintiff had constitutional standing even though he did not own stock at the time of the short-swing trading). Accordingly, the Court finds that Klein had standing to bring this case because she owned Qlik shares at the time the lawsuit was filed.

Cadian invokes the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), arguing that Klein lacks constitutional standing because she cannot demonstrate that she, as an individual, suffered a concrete and particularized injury because she was not a shareholder at the time of the alleged short-swing trading. Defs.' Mem. at 7 n.3. In *Spokeo*, the Supreme Court considered a case in which a plaintiff brought suit to enforce the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681e(b), a consumer protection statute. Spokeo was a consumer reporting agency that operated a website through which users could search for information about a person by inputting that person's identifying information. *Id.* at 1544. Spokeo would search its databases and provide detailed information to the user about the search subject, such as his address, telephone number, marital status, or age. *Id.* at 1546. The plaintiff sued Spokeo when he learned that the company incorrectly reported information about him, which he claimed violated the FCRA. *Id.*

Plaintiff alleged that Spokeo violated his statutory rights and that his personal interests in the handling of his credit information were individualized, and thus he had standing. *Id.*; *see also Robins v. Spokeo, Inc.*, No. Civ. 10-05306 (ODW), 2011 WL 597867, at *1 (C.D. Cal. Jan. 27, 2011). The district court dismissed plaintiff's complaint for lack of subject matter jurisdiction based on the absence of an injury in fact sufficient to confer constitutional standing

under Article III. *Spokeo,* 136 S. Ct. at 1543. The Ninth Circuit reversed, holding that based on plaintiff's allegation that Spokeo violated his statutory rights and the fact that his personal interests in the handling of his credit information are individualized, he adequately alleged an injury in fact. *Id.*

The Supreme Court reversed the Ninth Circuit, holding that standing requires an injury in fact, and that Congress "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1548 (citation and internal quotation marks omitted). The injury-in-fact element requires a plaintiff to show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The Court reiterated that "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" *Id.* at 1549 (quoting *Lujan*, 504 U.S. at 578, 112 S.Ct. 2130). The Court added that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact" and in such circumstances, "a plaintiff . . . need not allege any *additional* harm beyond the one Congress has identified." *Id.* (emphasis in original).

The Supreme Court's unanimous decision in *Gollust* and the Second Circuit's decision in *Bulldog Investors* both pre-date *Spokeo*. However, Cadian's suggestion that *Spokeo* alters the constitutional sufficiency of the statutory standing conferred by Section 16(b) on plaintiffs who did not hold interests in an issuer at the time of the short-swing trading is unavailing. *See Roth*, 2017 WL 3242326, at *4 (considering the effect of *Spokeo* on *Bulldog Investors* in holding that a Section 16(b) derivative plaintiff had constitutional standing even though he did not own stock at the time of the short-swing trading). *Spokeo* addressed only the sufficiency of a claim brought

by an individual on his own behalf, not a derivative claim brought on behalf of the corporation. *Bulldog Investors* is consistent with *Spokeo* in that the Second Circuit recognized that a statutory violation serves as a basis for Article III standing only where a violation of a statute goes hand in hand with a distinct, palpable and non-theoretical injury in fact, can. *See* 696 F.3d at 177–78.  In *Bulldog Investors,* the Court did not find standing on the basis of a statutory violation alone:  it recognized that the corporate issuer (and by extension, the derivative suit plaintiff) suffered distinct and real injury in that case, since its reputation of integrity and marketability of its stock were damaged by insider trading, which is a serious breach of fiduciary duty.  *Id.*  Moreover, *Spokeo* does not even mention *Gollust*, much less overturn it.  This Court could reject the holdings in *Gollust* or *Bulldog Investors* if a showing is made that its rationale was overruled either implicitly or expressly by the Supreme Court in *Spokeo*, but no such showing has been made here.  *See United States v. Ianniello*, 808 F.2d 184, 190 (2d Cir. 1986), *abrogated on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989).

b)   Jurisdiction After the Cash-Out Merger

A more difficult constitutional question is whether the Court retained jurisdiction of the action after the cash-out merger, which divested Klein's interest in Qlik.  Cadian argues that Klein lost any possible economic interest in the lawsuit in late August 2016 when her shares were cashed out.  Defs.' Mem. at 9.  Notably here, Klein concedes that "the merger terminated her right to continue this action because she lost her personal stake in the outcome."  Pl.'s Mem. at 2.  Klein contends, however, that the Section 16(b) claim, which was brought on Qlik's behalf, has not been resolved, and thus the controversy lives on in this derivative action because she is a nominal plaintiff and her loss of economic interest is immaterial to Qlik's recovery.  Pl.'s Mem. at 6–7.

The Second Circuit has outlined that in a Section 16(b) derivative action, there are two steps to the injury analysis. First, because a derivative action generally is "a mere procedural device to enforce" substantive rights belonging to the issuer . . . there must be injury in fact to that real party in interest." *Bulldog Inv'rs Gen. P'ship*, 696 F.3d at 175–76. Second, the Supreme Court has recognized that when an issuer's interests are pursued derivatively by a shareholder, a "serious constitutional question" would arise if the shareholder were allowed to maintain the Section 16(b) claim even after losing all personal financial interest in the outcome of the litigation. *Id.* (citing *Gollust*, 501 U.S. at 126).

Cadian argues that the Supreme Court's decision in *Gollust* dictates dismissal. Defs.' Mem. at 6–7. There, the Supreme Court addressed whether a plaintiff who properly files a Section 16(b) lawsuit loses standing due to a corporate reorganization that occurs while the action is pending. *Gollust,* 501 U.S. at 122. The plaintiff in *Gollust* was a shareholder of Viacom International, Inc. ("Viacom") at the time that he brought a Section 16(b) action on Viacom's behalf. *Id.* at 118. Viacom was then acquired by another company during the pendency of the lawsuit, and Viacom's shareholders "received a combination of cash and stock in [the new acquiring parent company] in exchange for their [Viacom] stock." *Id.* at 118–19. The Court explained that a "plaintiff must maintain a 'personal stake' in the outcome of the litigation throughout its course." *Id.* at 125. Despite the fact that the plaintiff no longer owned Viacom stock, the Supreme Court held that the plaintiff satisfied both the statutory and constitutional standing requirements because "[h]e owned a 'security' of the 'issuer' at the time he 'instituted' [the] action" and "retain[ed] a continuing financial interest in the outcome of the litigation derived from his stock in International's sole stockholder . . ." *Id.* at 127. Thus this

continuing—albeit indirect—interest sufficed to confer standing because the plaintiff would benefit if the action succeeded. *See id.*

Further, in *Gollust*, the Supreme Court explained that "Congress must, indeed, have assumed any plaintiff would maintain some continuing financial stake in the litigation . . . [f]or if a security holder were allowed to maintain a § 16(b) action after he had lost any financial interest in its outcome, there would be serious constitutional doubt whether that plaintiff could demonstrate the standing required by Article III's case-or-controversy limitation on federal court jurisdiction." *Gollust*, 501 U.S. at 125–26.[8] The Supreme Court did not need to reach that question because it found that the plaintiff's continuing financial interest in the acquiring company was sufficient to satisfy the case and controversy requirement. The issue before this Court is the precise question the Supreme Court did not reach—whether subject matter jurisdiction still exists where it is undisputed that the individual plaintiff has lost her personal financial stake in the outcome of the litigation due to divestment.[9]

Here, unlike in *Gollust*, Klein has no continuing financial interest, direct or indirect, in the issuer's new parent corporation. Under the terms of the merger agreement, each share of Qlik common stock was cancelled and converted to the right to receive $30.50 in cash with no provision of stock in the surviving corporation. Thus, Klein concedes that because she received

---

[8] The parties dispute the appropriate analytical framework the Court should apply here. Cadian argues that Klein lacks standing, but Klein asserts that Cadian conflates standing and mootness because "standing refers to the interest that the plaintiff must have at the inception of the litigation; mootness occurs when a plaintiff loses that interest during the course of the case." Pl.'s Mem. at 3. Klein argues this distinction is important because whereas a plaintiff bears the burden of demonstrating standing, the defendant bears the burden of proving that a case has become moot, and because Courts analyze the mootness doctrine with more "flexibility." *Id.* at 3–4. While it may be true that courts have distinguished between standing and mootness, the Supreme Court in analyzing whether a "plaintiff would maintain some continuing financial stake" in a Section 16(b) litigation has indicated that the applicable doctrine is that of standing. *Gollust*, 501 U.S. at 125–26.

[9] In *Bulldog Investors*, the Second Circuit also did not address this constitutional question because there was no dispute concerning the plaintiff's continuing financial stake in the litigation. *See Bulldog Inv'rs*, 696 F.3d. at 176.

cash, she lost all personal financial interest in the outcome of the Section 16(b) litigation, and this fact alone is dispositive of her lack of standing. *See Gollust*, 501 U.S. at 126 ("[T]he plaintiff must maintain a 'personal stake' in the outcome of the litigation throughout its course."); Romeo & Dye § 9.03[2][a][iv] ("A plaintiff-security holder who institutes a Section 16(b) lawsuit must maintain a continuous financial interest in the lawsuit throughout the litigation.").

      c)    <u>Substitution Under Rule 17</u>

The Court now must consider whether Klein is still able to substitute Qlik as a plaintiff even though she lacks personal standing. Plaintiff argues that dismissing the action entirely due to Klein's loss of her shareholder interest undermines the public policy of Section 16(b). Pl.'s Mem. at 12. While it may be true that the statute recruits the issuer or stockholders to enforce the law's prohibition on short-swing trading by insiders, even Congress cannot bypass the constitutional requirements of standing. While "Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules . . . Article III' s requirement remains: the plaintiff still must allege a distinct and palpable injury to himself." *Robainas v. Metro. Life Ins. Co.*, No. 14 Civ. 9926 (DLC), 2015 WL 5918200, at *6 (S.D.N.Y. Oct. 9, 2015), *aff'd sub nom. Ross v. AXA Equitable Life Ins. Co.*, 680 F. App'x 41 (2d Cir. 2017) (internal quotation marks and citation omitted). "Cases recognizing that a federal statutory violation can confer standing rely on finding a concrete injury in making that determination." *Id.* (listing cases). While it is well settled law that, since recovery is for the corporation, a corporation is the real party in interest and the stockholder plaintiff is but 'the mere vehicle of recovery" in a Section 16(b) action, *Blau v. Lamb*, 314 F.2d 618, 619 (2d Cir. 1963), no authority suggests that Congressional policy overrides Article III's requirements. *See Bulldog Inv'rs*, 696

F.3d at 180 ("Although Congress had a "general interest in safeguarding the integrity of the stock market" when it enacted Section 16(b) of the Securities Exchange Act of 1934 and required short-swing profits to be disgorged, "it did not eliminate the injury requirement of standing."").

For the same reason, Klein's argument that Qlik should be allowed to substitute as the "real party in interest" under Rule 17(a) even though she lacks a continuing personal interest in the litigation also fails: Rule 17(a) cannot create jurisdiction that does not exist. Although the Second Circuit has not considered the precise issue of whether a real party in interest may be substituted under Rule 17 where an original Plaintiff loses her interest in the litigation after commencement of the action, the recent case of *Cortlandt St. Recovery Corp. v. Hellas Telecommunications*, 790 F.3d 411 (2d Cir. 2015), is instructive. In *Cortlandt Street*, the district court held that the plaintiff lacked standing to pursue contract claims because of the lack of a valid assignment. *Id.* at 418. On appeal, the plaintiff argued that even if it lacked constitutional standing, the district court erred in denying its request to amend the complaint to cure that deficiency by means of either a substitution or an assignment pursuant to Rule 17(a)(3). *Id.* at 420, 422. The Second Circuit did not reach the issue of whether a substitution under Rule 17 is permissible even where a plaintiff lacks standing as to all of her claims because it found that neither of the plaintiff's contemplated substitution and assignments were allowed under Rule 17(a)(3). *Id.* at 423.

In dictum, however, *Cortlandt Street* considered whether a substitution, assignment or ratification under Rule 17 would be permissible even where a plaintiffs lacked standing at the time of the filing of the original complaint. *Id.* at 422–23. The majority opinion noted that the Sixth Circuit in *Zurich Insurance Co. v. Logitrans*, Inc., 297 F.3d 528, 531 (6th Cir. 2002), held that where a plaintiff has no standing at the outset of litigation, it cannot "make a motion to

substitute the real party in interest." 790 F.3d at 423. The Second Circuit also noted that *Zurich* has been "met with some criticism" and quoted a leading treatise that characterized it as "troubling." *Id.* (citing 13A Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 3531 n. 61 (3d ed. 2014)). The author of the *Cortlandt Street* majority opinion also wrote a concurrence in which he emphasized that *Zurich* was not the law of the Second Circuit, and suggested that it should not be. *See Cortlandt Street*, 790 F.3d at 425 (Sack, J., concurring).

Despite the Second Circuit's cautionary dictum regarding *Zurich,* the Second Circuit has repeatedly emphasized that "Rule 17 does not … affect jurisdiction and relates only to the determination of proper parties and the capacity to sue." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193–94 (2d Cir. 2003) (citing 4 James William Moore, et al., Moore's Federal Practice § 17.13 (3d ed. 1999)); *Lunney v. United States*, 319 F.3d 550, 557 (2d Cir. 2003) ("Rule 17(a) cannot be construed to extend subject matter jurisdiction."); *Airlines Reporting Corp. v. S and N Travel, Inc.*, 58 F.3d 857, 861 n. 4 (2d Cir. 1995) ("Rule 17(a) . . . is a procedural rule which does not extend or limit the subject matter jurisdiction of a federal court."); *see also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 90 (2005) (Rule 17(a) "address[es] party joinder, not federal-court subject-matter jurisdiction"). It is also well-settled law that the Federal Rules of Procedure cannot expand jurisdiction beyond its constitutional limits. *See* Fed. R. Civ. P. 82 ("[The Federal Rules of Civil Procedure] do not extend or limit the jurisdiction of the district courts . . ."); *Kent v. N. California Reg'l Office of Am. Friends Serv. Comm.*, 497 F.2d 1325, 1329 (9th Cir. 1974) ("There is no doubt that . . . the trustees are the real party in interest by virtue of Fed. R. Civ. P. 17(a). But Rule 17(a) means only that the trustees have a real interest in the trust fund. Rule 17(a) does not give them standing; 'real party in interest' is very

different from standing.") (citing 6 C. Wright & A. Miller, Federal Practice and Procedure §

1542, at 641 (1971)).[10]

Thus, even if the Court were to find that Qlik is a real party in interest, its amenability to

substitution under Rule 17(c) cannot alter Klein's lack of constitutional standing.[11]  No fewer

than four other district courts in the Second Circuit have reached similar conclusions.  *See Tech-*

*Sonic, Inc. v. Sonics & Materials, Inc*., No. 3:12 Civ. 01376 (MPS), 2016 WL 3962767, at *15

(D. Conn. July 21, 2016) (analyzing opinions from district courts in the Second Circuit and

holding that "Rule 17 cannot cure a standing defect if, as here, a court lacks jurisdiction over all

the claims in the case"); *Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12 Civ. 0722 (PAE), 2012 WL

4849146, at *7-8 (S.D.N.Y. Oct. 12, 2012) (rejecting an argument that a plaintiff who lacked

standing could remedy the jurisdictional defect under Rule 17, and noting that "where courts in

this Circuit have used . . . Rule 17(a)(3) to remedy defects in standing they have generally done

so where the plaintiff clearly had standing on another claim that it brought."); *In re SLM Corp.*

*Sec. Litig*., 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (declining to approve assignment of claims

because "the majority of courts to allow an assignment of claims after the onset of litigation do

so only where plaintiff had constitutional standing on another claim"); *Bd. for Managers of*

*Mason Fisk Condo. v. 72 Berry St., LLC*, 801 F. Supp. 2d 30, 39-40 (E.D.N.Y. 2011) (Rule 17

---

[10] Klein erroneously conflates the standing and real party in interest analyses.  Standing and real party in interest issues overlap "to the extent that the question in both is whether the plaintiff has a personal interest in the controversy."  *Whelan v. Abell,* 953 F.2d 663, 672 (D.C. Cir. 1992) (citing 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1524, at 329–30 (1990)).

[11] The same is true for Klein's motion for substitution under Rule 25(c).  "As to subject matter jurisdiction, Rule 25(c) does not change the constitutional requirement that an actual case or controversy must exist throughout a lawsuit."  *Reibman v. Renesas Elecs. Am., Inc.*, No. 11 Civ. 03847 (JCS), 2014 WL 251955, at *7 (N.D. Cal. Jan. 7, 2014).

"cannot expand the Court's jurisdiction" and cannot "retroactively cure [a] jurisdictional deficiency.'").[12]

Because Klein has no standing, there is no jurisdiction, and the action must be dismissed. *See In re Mercury Interactive Corp. Derivative Litig.*, 487 F. Supp. 2d 1132, 1134–35 (N.D. Cal. 2007) (in a Section 16(b) lawsuit, also initiated by Klein and her counsel, finding that plaintiff was divested of any interest in the litigation by the sale of her shares in the issuer for cash, and thus she lacked standing to pursue the action on behalf of that issuer); *see also Blasband v. Rales*, 971 F.2d 1034, 1041 (3d Cir. 1992) (applying Delaware law and holding that "[w]here there has been a cash-out merger, it is clear that a former shareholder may not maintain a derivative action, for he or she would no longer have an interest in a subsequent corporate recovery. However, where . . . the plaintiff receives shares of a new corporate entity, the standing issue is less clear, as the plaintiff will have a financial interest in the derivative action.") (internal citation omitted).

**B.      Motion to Substitute the Plaintiff**

For the reasons discussed above, because the Court no longer has jurisdiction over this matter, the Court will not consider Plaintiff's arguments on the merits regarding substitution of Qlik as a Plaintiff. *See Steel Co.,* 523 U.S. at 101–02 ("For a court to pronounce upon [the merits] when it has no jurisdiction to do so . . . is . . . for a court to act ultra vires."); *Sikhs for*

---

[12] To be sure, there have been cases in which courts in this Circuit have used Rule 17(a) to cure standing deficiencies. For example, in *Digizip.com Inc. v. Verizon Services Corp.*, 139 F. Supp. 3d 670 (S.D.N.Y. 2015), upon which Klein relies, the court held that the plaintiff had Article III standing, but lacked prudential standing, which the court allowed plaintiff to cure through Rule 17. The Court noted that the "use of Rule 17(a)(3) does not expand the constitutional limits of standing." *Id.* at 679. *See also In re Vivendi Universal, S.A. Secs. Litig.*, 605 F.Supp.2d 570, 584 (S.D.N.Y. 2009) (holding some plaintiffs had third party standing, and those who did not could cure their standing problems with assignments). Subsequent courts have distinguished those decisions, noting that "where courts in this Circuit have used Rule 17(a)(3) to remedy defects in standing, they have generally done so where the plaintiff clearly had standing on another claim that it brought." *Clarex*, 2012 WL 4849146, at *8.

*Justice Inc. v. Indian Nat'l Cong. Party*, 17 F. Supp. 3d 334, 348 (S.D.N.Y.), *aff'd sub nom.*

*Sikhs for Justice, Inc. v. Nath*, 596 F. App'x 7 (2d Cir. 2014) ("Given that the Court lacks

jurisdiction to hear Plaintiffs' case, the Court will not reach dismissal on the merits."); *Capellupo*

*v. Webster Cent. Sch. Dist.*, No. 13 Civ. 6481 (EAW), 2014 WL 6974631, at *4 (W.D.N.Y. Dec.

9, 2014) ("Because the Court concludes that it lacks jurisdiction, it will not consider the merits-

based arguments raised by Defendants because to do so would be an exercise of jurisdiction.").[13]

## IV.    CONCLUSION

For the reasons stated above, Cadian's motion to dismiss the Complaint is GRANTED

and Klein's motion to substitute Qlik is DENIED. The Clerk of the Court is respectfully directed

to terminate the motions, Docs. 31 and 37, and close the case.

It is SO ORDERED.

Dated:    September 14, 2017
          New York, New York

                                                    Edgardo Ramos, U.S.D.J.

---

[13] Even if the Court had standing to entertain Plaintiff's motion, the motion would fail. As the Second Circuit has explained, the dismissal provision in Rule 17(a)(3) was added "to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought" and "codifies the modern judicial tendency to be lenient when an *honest mistake* has been made in selecting the proper plaintiff." *Cortlandt St. Recovery Corp.*, 790 F.3d at 421 (emphasis added); *see also Bd. of Managers of Mason Fisk Condo.*, 801 F. Supp. 2d at 40 ("Even if the Rule could retroactively cure the jurisdictional deficiency, the Board has failed to show the injustice or excusable mistake that courts have required before applying Rule 17(a)(3)."). No such honest mistake in selecting the proper party was made here. Section 16(b) clearly authorizes both the issuer of the security traded in violation of Section 16(b) or "the owner of any security of the issuer in the name and in behalf of the issuer." 15 U.S.C. § 78p(b). Here, Klein demanded that Qlik sue Cadian based on their alleged short-swing trading, but Qlik declined Klein's demand to sue. Compl. ¶ 36. It was only after the cash-out merger divested Klein of her shares—and thirteen months after she filed the lawsuit—that Qlik decided to litigate the Section 16(b) claims on its own behalf. In short, this is not a classic Rule 17(a)(3) scenario where a litigant inadvertently failed to bring a claim in the name of the real party in interest; Qlik was not a plaintiff because it chose not to be a plaintiff. Additionally, the modern function of Rule 17 is "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." *Cortlandt St. Recovery Corp.*, 790 F.3d at 421. Neither of those risks are present here. Moreover, Rule 25(c) addresses the addition of a party pursuant to a transfer of interest that occurs after the filing of the complaint to bring a successor in interest into court when "it has come to own the property in issue." *Negrón–Almeda v. Santiago*, 579 F.3d 45, 53 (1st Cir. 2009). Klein's substitution motion based on Rule 25(c) is inappropriate because Qlik is not a transferee of any interest of Klein.